

## NUMBER 13-22-00506-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

SOUTH TEXAS EDUCATIONAL
TECHNOLOGIES, INC. D/B/A HORIZON
MONTESSORI PUBLIC SCHOOLS,                          **Appellant,**

**v.**

MAHDI A. SHAHEEN,                                   **Appellee.**

### On appeal from the County Court at Law No. 9
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Silva and Peña
### Memorandum Opinion by Chief Justice Contreras

Appellant South Texas Educational Technologies, Inc. d/b/a Horizon Montessori

Public Schools (Horizon) appeals the trial court's denial of its plea to the jurisdiction in

this employment discrimination case filed by appellee Mahdi A. Shaheen. *See* TEX. CIV.

PRAC. & REM. CODE ANN. § 51.014(a)(8). We reverse and render judgment.

## I. BACKGROUND

Horizon is an open enrollment charter school with multiple campuses, each housing its own principal. Horizon employed "parent liaisons" who, along with the principals, were responsible for recruiting students and increasing enrollment at the various Horizon campuses at which they worked. The parent liaisons were responsible for certain limited marketing tasks. Horizon's superintendent, Alim U. Ansari, was familiar with Shaheen and knew he was searching for work. In 2014, Ansari created the position of "marketing specialist" and hired Shaheen for that role to "enhance" the work of the parent liaisons. Shaheen's duties were to "interact with new media" and "maintain positive relationships with the community."

In October 2016, Shaheen filed an internal complaint with Horizon describing what he considered a contentious interaction he had with the principal at the school's Harlingen campus, Gloria Patricia Quesada, which resulted in his allegedly suffering from anxiety and panic attacks. Specifically, he asserted that:

> On Aug[ust 29, 2016,] Ms. Quesada . . . asked [me] at 2:00 p.m. to help her with school uniforms. I was busy and I told her if I can help her once I'm finished with my work. And since that day she has been very combative . . . and confrontational with me.

Ansari fired Shaheen in January 2017. On February 28, 2017, Shaheen, "a citizen of the United States of Palestinian descent," filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC).[1] On May 4, 2017,

---

[1] The EEOC charge is not a part of the appellate record.

Shaheen received notice of the dismissal of his charge and his right to file a civil action. On July 28, 2017, Shaheen filed suit alleging that his termination resulted from discrimination based on his status as a Muslim, Palestinian, and "Arab/Middle-Eastern[er]" and retaliation for "reporting Quesada's discriminatory conduct towards [him]."

Horizon filed its original answer on August 28, 2017, and an amended answer on September 30, 2021, in which it generally denied appellant's claims and asserted the affirmative defense of governmental immunity. On December 1, 2021, Horizon filed its plea to the jurisdiction, arguing that: (1) as a charter school, it was protected by governmental immunity; (2) Shaheen failed to establish a prima facie case of discrimination; and (3) Shaheen failed to establish a prima facie case of retaliation. Horizon attached to its plea Shaheen's internal complaint form and an affidavit by Ansari in which he asserted, among other things, that:

1. He is "a Muslim of Middle Eastern decent" and "knew [Shaheen] from the local mosque";

2. "Unfortunately, [Shaheen] was unqualified for [his] position and failed to perform";

3. Shaheen "failed to . . . foster communications with the public" and [i]nstead, he spent most of his time doing nothing";

4. Horizon had "to watch its pennies," so "in a cost cutting measure, [Ansari] eliminated [Shaheen's] position, especially since he was incompetent and was not helping [Horizon] in its mission of educating students";

5. Shaheen "was fired," "no one was hired to perform his duties," and Horizon "has not employed a marketing specialist since the time

[Shaheen] was discharged";

6. "Discrimination had nothing to do with [Shaheen's] discharge";

7. Shaheen "never complained to [Horizon] about being discriminated against, or otherwise mistreated as a result of being Muslim or Middle Eastern"; and

8. "The first time any complaint of discrimination came up was when [Shaheen] filed his discrimination charge" with the EEOC.

On June 8, 2022, the trial court held a hearing on Horizon's plea. Nearly the entire hearing concerned whether charter schools enjoy governmental immunity. Ultimately, the trial court set another hearing on the plea, as Ansari was not present, and Shaheen wanted to cross-examine him based on the information Ansari presented in his affidavit.

On June 30, 2022, the trial court held a second hearing on Horizon's plea at which Ansari was the sole witness. The focus of the hearing was on whether Shaheen was replaced by, or his responsibilities delegated to, other employees. Ansari confirmed at multiple points that the marketing specialist position was discontinued, that nobody was hired to replace Shaheen in that now-defunct role, and that the duties assigned to Shaheen were not reassigned to any of the Horizon principals or parent liaisons.

On August 19, 2022, Shaheen filed his "objections and response to [Horizon]'s frivolous plea to the jurisdiction," in which he again argued that Horizon does not enjoy governmental immunity and even if it did, he met his burden to establish a prima facie case of discrimination to maintain his suit. Shaheen neither attached any affidavits or other evidence to his pleadings, nor testified at the plea to the jurisdiction hearings.

On September 29, 2022, the trial court denied Horizon's plea. Horizon filed a request for findings of fact and conclusions of law, which was overruled by operation of

law. This appeal followed.

## II.  PLEA TO THE JURISDICTION

Horizon presents its issues on appeal in the form of two questions: (1) "Is [Horizon], an open enrollment charter school, entitled to claim sovereign/governmental immunity?"; and (2) "Did the trial court err in denying [its] plea to the jurisdiction?" We address these two issues together.

## A.  Standard of Review & Applicable Law

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without considering whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction. *Id.* The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Whether a trial court has subject-matter jurisdiction is a question of law which we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

"A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). "When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction." *Id.* In doing so, "[w]e construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

When a plea to the jurisdiction "challenges the existence of jurisdictional facts, we

5

must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Clark*, 544 S.W.3d at 770–71. In that case, "[t]he analysis . . . 'mirrors that of a traditional summary judgment.'" *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Garcia*, 372 S.W.3d at 635); *see* TEX. CODE CIV. P. 166a(c). That is, "[i]nitially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction." *Garcia*, 372 S.W.3d at 635. If it meets that burden, "the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id.* We take as true all evidence favorable to the nonmovant plaintiff and "indulge every reasonable inference and resolve any doubts in the plaintiff's favor." *Metro. Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see Miranda*, 133 S.W.3d at 226. If the relevant evidence is undisputed or if the plaintiff fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Garcia*, 372 S.W.3d at 635; *see Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798–99 (Tex. 2016) (op. on reh'g).

"Local governmental entities 'enjoy governmental immunity from suit, unless immunity is expressly waived.'" *Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014) (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010)). Open-enrollment charter schools "act as an arm of the State government" and are thus entitled to governmental immunity in the same respect as public schools. *El Paso Educ. Initiative, Inc. v. Amex*

6

*Props., LLC*, 602 S.W.3d 521, 529–30 (Tex. 2020); *see* TEX. EDUC. CODE ANN. § 12.1056. "Whether sovereign immunity defeats a trial court's subject-matter jurisdiction is a question of law properly raised in a plea to the jurisdiction." *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904–05 (Tex. 2021).

**B.      Texas Commission on Human Rights Act**

The Texas Commission on Human Rights Act (TCHRA) prohibits, among other things, race and national origin discrimination and retaliation by employers. *See* TEX. LAB. CODE ANN. §§ 21.001, 21.051, 21.055. Section 21.051 of the labor code states:

> An employer commits an unlawful employment practice if because of race . . . [or] national origin . . . the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . .

*Id.* § 21.051(1). Section 21.055 provides that an employer commits an unlawful employment practice if it retaliates or discriminates against a person who, under chapter 21 of the labor code, "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding or hearing." *Id.* § 21.055. An "employer" includes "a county, municipality, state agency, or state instrumentality." *Id.* § 21.002(8)(D).

"The TCHRA waives immunity from suit only for statutory violations, which means the trial court lacks subject-matter jurisdiction over the dispute absent" a claim for conduct that actually violates the TCHRA. *Clark*, 544 S.W.3d at 763. If a plaintiff fails to allege a viable claim for violation of the TCHRA, then the trial court lacks jurisdiction, and the claim should be dismissed. *Garcia*, 372 S.W.3d at 637.

To establish unlawful discrimination under the TCHRA, a plaintiff may rely on either

direct or circumstantial evidence. *Clark*, 544 S.W.3d at 781–82. A case based on circumstantial evidence is known as a "pretext" case. *See Quantum Chem. Co. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). In a pretext case, the plaintiff's goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Id.* In analyzing such a contention, "we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *see Clark*, 544 S.W.3d at 782.

> Under this framework, (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case, (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action, and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext.

*Flores*, 612 S.W.3d at 305; *see Clark*, 544 S.W.3d at 782. If a plaintiff fails to establish a prima facie case against a governmental unit or overcome the rebuttal evidence, then the trial court lacks jurisdiction and must dismiss the case. *See Garcia*, 372 S.W.3d at 637; *Miranda*, 133 S.W.3d at 225–26.

**C.    Prima Facie Case**

The requirements to establish a prima facie case of discrimination "vary depending on the circumstances." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017). To establish a prima facie case of race or national origin discrimination, the plaintiff must show

> (1) he was a member of a protected class, (2) he was qualified for his employment position, (3) he was subject to an adverse employment decision, and (4) he was replaced by someone outside of the protected class, or he was treated less favorably than similarly situated members of

8

the opposite class.

*Michael v. City of Dallas*, 314 S.W.3d 687, 690–91 (Tex. App.—Dallas 2010, no pet.); *accord Tex. Veterans Comm'n v. Lazarin*, No. 13-15-00045-CV, 2016 WL 552117, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 11, 2016, pet. denied) (mem. op). To prove he was treated less favorably than a similarly situated employee outside his class, appellant must "provide comparative evidence." *Flores*, 612 S.W.3d at 311 (citing *Garcia*, 372 S.W.3d at 640–41). "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Id.* at 312. "Though their circumstances need not be 'identical,' they must be 'nearly identical[.]' Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Id.* (citations omitted).

To establish a prima facie case of retaliation, the plaintiff must show "(1) [he] engaged in an activity protected by the TCHRA, (2) [he] experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Lara*, 625 S.W.3d at 58. "An employee engages in a protected activity by, among other things, filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC." *Clark*, 544 S.W.3d at 786 (citing TEX. LAB. CODE ANN. § 21.055). In the case of an internal complaint, "[t]he employee's complaint must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id.* "'Magic words' are not required to invoke the TCHRA's anti-retaliation protection. But complaining only of 'harassment,' 'hostile environment,' 'discrimination,' or 'bullying' is not enough." *Id.* at 786–87 (footnotes

9

omitted).

**D.     Analysis**

As to Horizon's first issue, open enrollment charter schools are entitled to claim governmental immunity. *See* TEX. EDUC. CODE ANN. § 12.1056; *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 530 ("[W]e hold that open-enrollment charter schools and charter-holders are entitled to governmental immunity."). On to issue two.

There is no dispute that Shaheen proceeds under a pretext theory of discrimination. Horizon concedes that Shaheen has met his burden to prove two factors of his prima facie case of discrimination: he is a member of a protected class and was terminated from his employment. *See Michael*, 314 S.W.3d at 690–91. However, it challenges the trial court's implied ruling that Shaheen demonstrated he was qualified for his position and was replaced by or treated better than a similarly situated person outside of his protected class. *See id.* We will assume without deciding that Shaheen was qualified for his position and assess the latter factor.

Ansari's affidavit and testimony negated Shaheen's prima facie case of discrimination by, among other things, stating that nobody outside of Shaheen's protected class replaced or was treated better than Shaheen. *See Garcia*, 372 S.W.3d at 635; *Michael*, 314 S.W.3d at 690–91. Thus, Horizon satisfied its initial burden to prove that the trial court lacked jurisdiction, and the burden then shifted to Shaheen to produce controverting evidence to create a fact issue on jurisdiction. *See Garcia*, 372 S.W.3d at 635.

Simply put, Shaheen provided no evidence that he was replaced by any employee

10

or treated worse than a similarly situated employee outside of his protected class. *See Flores*, 612 S.W.3d at 311–12; *Lara*, 625 S.W.3d at 52; *Michael*, 314 S.W.3d at 690–91. Indeed, save for his pleadings (which do not speak to this factor and, in any event, are not evidence, *see Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 27 (Tex. App.—Houston [14th Dist.] 2020, no pet.)), Shaheen submitted no evidence at all, and he did not testify at either of the plea hearings. Accordingly, the only evidence in the record is the evidence submitted by Ansari, including his affidavit, his hearing testimony, and Shaheen's internal complaint.

To establish his prima facie case, Shaheen asserts that Ansari testified that "[f]our women with Mexican-American surnames outside of [his] protected class (Palestinian) were treated better and different than [he was] since they absorbed his so-called marketing duties to 'enhance enrollment.'" However, this assertion finds no support in the evidence. During his testimony, Ansari stated on at least three occasions that: (1) the parent liaisons and principals had certain marketing duties before he hired Shaheen; (2) Shaheen was hired for a position created for him to "enhance" the parent liaisons' work; (3) after he terminated Shaheen, nobody was hired to replace Shaheen; and (4) none of the existing employees inherited Shaheen's responsibilities. In his affidavit, Ansari likewise asserted that he "eliminated Mr. Shaheen's position" and "no one was hired to perform his duties." Further, Shaheen's internal complaint merely states that Quesada was confrontational with him because he did not immediately "help her with school uniforms"—it makes no claims of discrimination. And Shaheen's EEOC charge is not in the record. Thus, there is no evidence in the record contradicting Ansari's testimony,

11

so Shaheen has not established a jurisdictional fact issue by providing evidence that he was replaced by somebody outside of his protected class. *See Michael*, 314 S.W.3d at 690–91.

Shaheen also failed to present comparative evidence that he was treated less favorably than a similarly situated employee outside of his protected class in some other respect. *See Flores*, 612 S.W.3d at 311; *Michael*, 314 S.W.3d at 690–91. In any case, the evidence showed that Shaheen was the sole marketing specialist at Horizon whose job was to "enhance" the parent liaisons' efforts—i.e., his job was different than that of the principals and parent liaisons. *See Flores*, 612 S.W.3d at 311. And "[e]mployees who hold different jobs are not similarly situated." *Id.* at 312; *cf. id.* ("Ordinarily, it will not be the case that a plaintiff is similarly situated to another employee when the plaintiff is subordinate to that employee." (quoting *Rincones*, 520 S.W.3d at 584)). Thus, Shaheen could not support a discrimination claim by comparing his treatment to the principals' and parent liaisons'. Shaheen failed to establish a prima facie case of race and national origin discrimination, so his claims should have been dismissed. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 225–26.

Shaheen states on appeal that he now "only seeks to pursue race and national origin discrimination claims against Horizon" and does not brief any arguments concerning his retaliation claim that he included in his original petition. *See* Tex. R. App. P. 38.1(i). Nevertheless, we address the retaliation claim in the event the trial court denied Horizon's plea on that ground, and we conclude there is no evidence of retaliation. *See Lara*, 625 S.W.3d at 58; *Clark*, 544 S.W.3d at 786–87. We have included verbatim above

12

the extent of the allegations in Shaheen's internal complaint. Nowhere in his complaint does he assert that discrimination was afoot. *See Lara*, 625 S.W.3d at 60–61; *Clark*, 544 S.W.3d at 786–87. And the EEOC charge (which may or may not contain such assertions) was made only after Shaheen's employment was terminated, so it cannot support his retaliation claim where his termination was the alleged challenged discriminatory act. *See Lara*, 625 S.W.3d at 58 (requiring a causal link between the protected activity and the alleged discriminatory act). Shaheen has failed to establish a prima facie case of retaliation. *See id.*; *Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 180–81 (Tex. App.—El Paso 2021, no pet.) (concluding that appellant failed to establish a prima facie case of retaliation because his internal complaint failed to provide evidence that he reported any unlawful discrimination).

Because Shaheen failed to establish a prima facie case of race or national origin discrimination or retaliation, the trial court erred by denying Horizon's plea to the jurisdiction. *See Lara*, 625 S.W.3d at 60–61; *Flores*, 612 S.W.3d at 312; *Garcia*, 372 S.W.3d at 643.

We sustain Horizon's issues on appeal.

### III.  CONCLUSION

We reverse the trial court's judgment and render judgment granting Horizon's plea to the jurisdiction and dismissing the case.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
1st day of June, 2023.

13